■ In the Matter of JAMES J. SEIFERHELD, Appellant, v RAYMOND KELLY, as Police Commissioner of the City of New York, and as Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Respondents. [895 NYS2d 49]—

Order and judgment (one paper), Supreme Court, New York County (Lottie E. Wilkins, J.), entered October 31, 2008, denying the petition to annul respondent Police Commissioner's determination which revoked petitioner's accident disability retirement benefits and inter alia, to restore said benefits, and dismissing the proceeding brought pursuant to CPLR article 78, unanimously reversed, on the law, without costs, the proceeding reinstated, the petition granted to the extent of annulling the determination, and the matter remanded to respondent Board of Trustees for further proceedings consistent herewith.

Petitioner, a 12-year veteran of the New York City Police Department (NYPD), was awarded accident disability retirement (ADR) benefits in May 2004 based on an injury to his

right shoulder and neck pain that radiated down to his right hand. In June 2004, the NYPD Medical Division, Absence Control and Investigations Unit, opened an investigation of petitioner in response to a complaint received by the NYPD Internal Affairs Bureau that petitioner was performing construction work. Petitioner was placed under surveillance and the results were reported to the Board of Trustees, which reconsidered petitioner's application under Administrative Code of City of NY § 13-254 ("Safeguards on disability retirement") and remanded the matter to the Medical Board. The Medical Board's reevaluation of petitioner in May 2005 included review of the surveillance videotape (which showed petitioner lifting and carrying heavy objects and hammering siding materials above his head), review of petitioner's medical records, and an interview and physical examination of petitioner. The Medical Board concluded that petitioner had "improved dramatically" since his last Medical Board exam and that he was capable of full duty as a police officer. The Board of Trustees considered the Medical Board's recommendation to rescind its prior decision awarding petitioner accident disability retirement benefits and eventually remanded the matter to the Medical Board.

In February 2006, the Medical Board once again considered petitioner's application and reviewed new medical evidence, interviewed petitioner and performed a physical examination. The Medical Board reaffirmed its previous recommendation that petitioner's application for ADR benefits be denied. In April 2006, the investigation and surveillance of petitioner were resumed. The investigating officer's report included an interview with Dr. Peter Galvin, an NYPD surgeon, who told the investigator that petitioner had replaced the roofing and siding on his office building and that he did not believe that petitioner was disabled since he had no difficulty performing the work. The investigator also reported observing petitioner loading scaffolding onto a truck, assisting a truck driver to remove a large bay window from a delivery truck, and installing a frame on the front windows of the second floor of a residence while standing on a roof.

The Board of Trustees reconsidered the Medical Board's recommendation to rescind its previous decision and remanded the matter to the Medical Board in July 2006. The Medical Board reinterviewed petitioner, performed a physical examination, and considered new medical evidence submitted by petitioner. It concluded that petitioner had shown "no significant objective changes since being previously examined" and that he seemed "to have made a remarkable recovery from his injury." The Medical Board reaffirmed its previous recommendations.

Once again, the Board of Trustees considered the Medical Board's recommendation and tabled the matter for several months. In April 2007, the Board of Trustees voted to rescind the ADR benefits and to put the officer back to work. Petitioner was placed on a "Departmental Special Preferred List" for a title position of police officer pursuant to Administrative Code § 13-254. However, he was subsequently notified that he had been found to be "not qualified" for the position due to a positive drug test showing the presence of cocaine in a hair sample. He was not offered any other position in "city-service" as contemplated by Administrative Code § 13-254 (a). In July 2007, the chief of the New York City Law Department's Pensions Division sent a memorandum to the Police Pension Fund's executive director advising that petitioner's disability pension should be suspended because he was no longer deemed disabled. Thereafter, petitioner was notified by the Fund's director of pension payroll that pursuant to the Safeguards provisions of the Administrative Code his benefit was suspended "because the Medical Board determined on May 24, 2005 that you are not disabled from performing the duties of a NYC Police Officer."

We reject petitioner's challenge to the Medical Board's determination that he is no longer disabled, since that determination is supported by "some credible evidence" and was not arbitrary and capricious (see *Matter of Borenstein v New York City Employees' Retirement Sys.*, 88 NY2d 756, 760-761 [1996]). The courts may not "substitute [their] own judgment for that of the Medical Board" (*id.* at 761 [internal quotation marks and citations omitted]).

However, the "suspension" or revocation of petitioner's disability benefits by the Police Pension Fund was without statutory authority, because it was not directed by the Board of Trustees. The "Safeguards on disability retirement" provision specifically empowers the Board of Trustees to determine whether a pensioner is able to engage in a gainful occupation and, upon determining that he is so able, to certify the name of such pensioner to the Civil Service Commission for placement as a "preferred eligible" on a list of candidates for positions for which he is qualified. It sets forth the Board's authority to reduce the amount of a disability pension in the case of a pensioner who is gainfully employed and the formula to be used in such a reduction (Administrative Code § 13-254 [a]). Administrative Code § 13-254 (b) provides the mechanism for revocation of a disability pension by the Board of Trustees on one ground only, that the pensioner refuses for one year to submit to a medical examination by a physician designated by

the Medical Board, a situation not present here. Even assuming, without deciding, that there is a statutory basis for the Board of Trustees to revoke petitioner's disability pension and medical benefits while at the same time not offering him a position in city-service and that such an action would not be arbitrary and capricious under the circumstances presented here, the Board of Trustees did not take that action. Indeed, the Board never considered whether that action should be taken. The last determination issued by the Board in this matter was that petitioner was not disabled and should be returned to work as a police officer. Concur—Sweeny, J.P., Catterson, Renwick, Freedman and Abdus-Salaam, JJ. **[Prior Case History: 22 Misc 3d 1132(A), 2008 NY Slip Op 52670(U).]**