[948 NE2d 1285, 925 NYS2d 1]

In the Matter of JAMES J. SEIFERHELD, Respondent, v RAYMOND KELLY, as Police Commissioner of the City of New York, and as Chairman of the Board of Trustees of the Police Pension Fund, Article II, et al., Appellants.

Argued March 24, 2011; decided April 28, 2011

**POINTS OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel*, New York City (*Mordecai Newman, Leonard J. Koerner, Larry A. Sonnenshein* and *Karen J. Seemen* of counsel), for appellants. Pursuant to Administrative Code of the City of New York § 13-254, the Board of Trustees of the Police Pension Fund is directed to place a pensioner on an eligibles list for a position for which he or she is qualified. It follows that the statute presumes a pensioner who is qualified for a return to city employment. Since the Department of Citywide Administrative Services, within its statutory authority, declined to find petitioner qualified for any city position based on his cocaine use, petitioner falls outside the scope of Administrative Code § 13-254 and is not entitled, as a matter of law, to the benefits it provides. Accordingly, there is nothing left for the Board of Trustees to decide and nothing to be gained by a remand. (*Matter of Caruso v Ward*, 72 NY2d 432; *Matter of Jennings v Leon*, 31 AD3d 762; *Matter of Stephens v Suffolk County Dept. of Civ. Serv.*, 15 AD3d 589; *Matter of Connor v New York City Police Dept.*, 22 AD3d 425; *Matter of*

*Jackson v Safir*, 261 AD2d 348; *Matter of Kearse v Brown*, 184 AD2d 271; *Matter of Boudreau v Levitt*, 67 AD2d 1053; *Matter of Mahoney v McGuire*, 107 AD2d 363, 66 NY2d 622; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of Gunning v Codd*, 49 NY2d 495.)

*Ungaro & Cifuni*, New York City (*Nicholas G. Cifuni* and *Robert A. Ungaro* of counsel), for respondent. I. Suspension of petitioner's accident disability retirement benefits is arbitrary, capricious and an abuse of discretion. (*Matter of O'Marah v Levitt*, 35 NY2d 593; *Roddy v Valentine*, 268 NY 228; *Matter of Day v Mruk*, 307 NY 349; *Birnbaum v New York State Teachers Retirement Sys.*, 5 NY2d 1; *Matter of Jones v Board of Trustees of N.Y. Fire Dept. Art. 1-B Pension Fund*, 123 AD2d 628; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County*, 34 NY2d 222; *Matter of 125 Bar Corp. v State Liq. Auth. of State of N.Y.*, 24 NY2d 174; *Sag Harbor Union Free School Dist. v Helsby*, 54 AD2d 391; *Matter of Gilligan*, 175 Misc 160.) II. Petitioner remains medically incapacitated from the performance of police duty and respondent's determination to the contrary was not based upon credible evidence. (*Matter of Meschino v Lowery*, 34 AD2d 255; *Matter of Drayson v Board of Trustees of Police Pension Fund of City of N.Y.*, 37 AD2d 378; *Matter of Scotto v Board of Trustees of Police Pension Fund of City of N.Y., Art. II*, 76 AD2d 774, 54 NY2d 918; *Matter of Nicolosi v Board of Trustees of N.Y. City Fire Dept., Art. 1-B Pension Fund*, 198 AD2d 282; *Matter of Holzberg v Kelly*, 13 AD3d 280; *Colwell v Suffolk County Police Dept.*, 158 F3d 635; *Daley v Koch*, 892 F2d 212; *Nelson v Bowen*, 882 F2d 45; *Murdaugh v Secretary of Dept. of Health & Human Servs. of U.S.*, 837 F2d 99; *Matter of Brady v City of New York*, 22 NY2d 601.) III. Respondent's authority under the provisions of Administrative Code of the City of New York § 13-254, safeguards on disability retirement, is rigidly defined and specifically limited. (*Matter of Caruso v New York City Police Dept. Pension Funds, Arts. 1 & 2*, 136 AD2d 266.) IV. The New York City Law Department has no authority in law to direct the termination of the petitioner's civil service pension benefits. (*United States v Rossomando*, 144 F3d 197; *Pajak v Pajak*, 56 NY2d 394; *Matter of Holzberg v Kelly*, 13 AD3d 280; *Silberzweig v Doherty*, 23 Misc 3d 618; *Matter of Benjamin [Hartnett]*, 175 AD2d 936.)

SMITH, J.

Petitioner, a New York City police officer, retired in 2004 and was awarded accident disability benefits. In the following years, the Police Department received information indicating that petitioner was not disabled; that he had made false representations to the Pension Fund; and that he had ingested cocaine, thus becoming ineligible to return to duty. The City, understandably, claims that it should not have to continue paying him a pension.

Despite the common-sense appeal of the City's position, we affirm the Appellate Division's order annulling the termination of petitioner's pension benefits. The Appellate Division correctly held that the benefits can be terminated only by the trustees of the Police Pension Fund, who have not taken the necessary action. However, while we recognize the technical merit of petitioner's argument, we express our distress at the way the system has malfunctioned in this case.

I

In December 2003, petitioner, after 11 years on the police force, applied for accident disability retirement. He claimed that as a result of a line-of-duty accident (a fall while walking on ice and snow) he suffered from constant pain in his right shoulder and neck, loss of range of motion in his neck and shoulder, and pain radiating into his arm, which prevented him from performing police duty. His application was granted, and he was awarded accident disability retirement on May 12, 2004 (see Administrative Code of City of NY § 13-252).

The following month, the Police Department received information that petitioner was working, and began an investigation that led a department official to report that petitioner was "performing construction work on a daily basis." The investigation included observations of the work, some of them videotaped. An investigator's reports say that petitioner was seen picking up siding, passing it to others, lifting it over his head and nailing materials above his head with both arms extended for some time—all tasks performed without apparent difficulty.

The Police Department informed the Police Pension Fund in November 2004 that petitioner "may no longer be disabled," and the Pension Fund agreed in December 2004 to "reexamine" petitioner. The reexamination included an interview by the

Pension Fund's Medical Board at which petitioner, according to the board's memorandum of the interview, said that he "cannot lift any heavy objects . . . cannot work overhead . . . has no outside work and his major occupation is babysitting his two children."

Despite the difference between petitioner's assertions and the videotapes, neither the Police Department nor the Pension Fund suggested—and neither, so far as the record shows, has suggested to date—that petitioner was guilty of fraud or misrepresentation, or that he should refund any of the pension money he had received. However, the Pension Fund's Medical Board did conclude in May 2005 that petitioner's condition "has improved dramatically," and recommended disapproval of his retirement application. The Pension Fund's trustees took no action on this recommendation for approximately two years, other than to remand the matter twice to the Medical Board, which twice reaffirmed its previous recommendation, noting in its second reaffirmance on September 19, 2006 that petitioner "seems to have made a remarkable recovery from his injury."

Finally, on April 11, 2007, the Pension Fund Board of Trustees voted, over the dissent of several trustees, to invoke New York City Administrative Code § 13-254, entitled "Safeguards on disability retirement," under which a disability pensioner found to be able to work may be returned to city service. The "safeguards" procedure soon hit a snag, however. Petitioner was placed on a list of candidates eligible to become police officers, but on July 6, 2007 he was informed that he was "medically disqualified" for that position "due to the presence of an unauthorized substance, cocaine, in your hair sample."

On July 12, the New York City Law Department advised the Pension Fund that "notwithstanding" petitioner's disqualification, "he is no longer deemed to be disabled, and he is no longer entitled to a disability pension." There is no indication in the record that the Pension Fund's Board of Trustees ever considered or acted on this advice, but on July 18, 2007 the Pension Fund's Director of Pension Payroll advised petitioner "that your pension benefit will be suspended beginning with the July 2007 payroll."

Petitioner brought this CPLR article 78 proceeding, seeking to annul the determination to suspend his pension benefits. Supreme Court denied the application (22 Misc 3d 1132[A], 2008 NY Slip Op 52670[U]). The Appellate Division reversed, annulling the suspension of benefits (70 AD3d 460 [2010]), and

granted leave to appeal to this Court. We now reluctantly affirm.

## II

The "safeguards" statute, New York City Administrative Code § 13-254, under which the Pension Fund tried to bring petitioner back to work, says, in relevant part:

"Once each year the board [of trustees of the Police Pension Fund] may . . . require any disability pensioner, under the minimum age or period for service retirement elected by him or her, to undergo medical examination. . . . Upon the completion of such examination the medical board shall report and certify to the board whether such beneficiary is or is not totally or partially incapacitated physically or mentally and whether he or she is or is not engaged in or able to engage in a gainful occupation. If the board concurs in a report by the medical board that such beneficiary is able to engage in a gainful occupation, he or she [sic] shall certify the name of such beneficiary to the appropriate civil service commission . . . and such commission shall place his or her name as a preferred eligible on such appropriate lists of candidates as are prepared for appointment to positions for which he or she is stated to be qualified. Should such beneficiary be engaged in a gainful occupation, or should he or she be offered city-service as a result of the placing of his or her name on a civil service list, such board shall reduce the amount of his or her disability pension . . . if any, to an amount which, when added to that then earned by him or her, or earnable by him or her in city-service so offered him or her, shall not exceed the current maximum salary for the title next higher than that held by him or her when he or she was retired." (§ 13-254 [a].)

The statute is complicated. In simplified summary, adequate for present purposes: A disability pensioner found to be able to work is put on a civil service list, and his or her pension is reduced based on outside earnings and the amount "earned . . . or earnable" in any city job that is offered.

The application of the statute to this case presents something of a puzzle, because although petitioner was put on a civil

service list, he was not, and evidently could not be, offered a job because of his cocaine use. If the statute is mechanically applied, petitioner might actually *benefit* from using cocaine, because he presumably does not want to be offered a city job; he wants to remain retired and receive his pension. Supreme Court, in a thoughtful opinion, correctly concluded that this anomaly could not have been intended by the statute's authors.

Supreme Court wrote: "These provisions . . . do not contemplate a situation where the beneficiary refuses to return to City service . . . or . . . where the beneficiary is disqualified from City service for reasons unrelated to the physical or mental ability to work." (2008 NY Slip Op 52670[U] at *8.) We do not necessarily agree that a beneficiary's *refusal* to return would not be covered by the text of the statute; the statute seems to contemplate a pension reduction for money "earnable" by a beneficiary who is "offered" city employment. In the situation before us, however, Supreme Court was right that there is a problem the text of the statute does not address. Where a beneficiary who would otherwise be brought back to city employment is disqualified from that employment by his own fault, either the reduction or suspension of his benefits must be a consequence, though the statute does not expressly say so.

The Appellate Division reversed Supreme Court's order, without discussing Supreme Court's analysis of the statute, because the suspension of petitioner's benefits "was not directed by the Board of Trustees" of the Pension Fund (70 AD3d at 462). The Appellate Division was correct.

It is clear from a reading of the safeguards statute that action under that statute must be taken by the board ("the board may . . . require"; "such board shall reduce"). Elsewhere, the Administrative Code, in two apparently redundant sections, says that the Pension Fund "shall be administered by a board of trustees" and that "[e]very act of the board of trustees shall be by resolution" (Administrative Code of City of NY § 13-202 [a], [b]; § 13-216 [a], [b]). The City points to no relevant exception to these provisions, or to any other provision of law that authorizes a suspension of benefits without a board vote.

The City's argument on this point is that, because petitioner was no longer entitled to benefits, ceasing to pay them was a "purely ministerial act." We disagree. However well justified a reduction or termination of benefits may be in this case, the Board of Trustees has to do it. There might be cases in which

the impropriety of paying benefits is so obvious that Pension Fund employees can simply stop paying, without either advance approval or ratification from the board; this might be true, for example, if the statute said on its face, "No benefits shall be paid to any beneficiary who has a positive drug test." But the application of the confusing safeguards statute to this case is something the trustees must address. Of course the trustees should weigh the advice of the City's Law Department in deciding the question, but the decision is theirs, subject to appropriate judicial review.

Nor can we accept the dissent's argument that the Board of Trustees revoked petitioner's pension by its April 11, 2007 vote. The minutes of the April 11 meeting say nothing about terminating benefits. They make clear that the trustees voted to bring petitioner "back off disability" through the safeguards statute, which offers no grounds, at least on the facts as they existed on April 11, for terminating benefits rather than reducing them. Indeed, the City has not argued here that petitioner's benefits were terminated on April 11. The City's position is that petitioner would have continued to be entitled to benefits but for his positive drug test in July.

Though petitioner is entitled to prevail here, the case as a whole is very troubling. It seems from the record that petitioner either has received or is in a position to claim accident disability benefits for the last seven years, and counting. Yet any reader of this record must have serious doubt that he was ever really disabled. Whether any of the benefits paid to him may be recouped is a subject on which we express no opinion. But we do express the hope that the Pension Fund's Board of Trustees will generally act to protect the Fund and the public with more efficiency than it has displayed in this case.

Accordingly, the order of the Appellate Division should be affirmed, without costs, and the certified question answered in the affirmative.

PIGOTT, J. (dissenting). Because I believe that the Police Pension Fund Board of Trustees revoked petitioner's disability retirement benefits on April 11, 2007, and that the July 12, 2007 Law Department memorandum challenged by petitioner merely interpreted that revocation, I respectfully dissent.

The Board of Trustees voted on April 11, 2007 not only to return Seiferheld to city service, but also to deny him—"disapprov[e]" him for—accident disability retirement, "bringing the

member back off disability." As the Deputy Executive Director of the Police Pension Fund informed the Department of City-wide Administrative Services (DCAS), in a letter of May 2, 2007, the Board of Trustees had rescinded its earlier decision approving Seiferheld's accident disability retirement application, and "denied him a continuation of disability benefits." In my view, the Board of Trustees *did*, despite Seiferheld's allegations to the contrary, make the final determination regarding the revocation of his accident disability retirement benefits.

With his disability pension revoked, petitioner became subject to the "safeguards" statute, New York City Administrative Code § 13-254, and he would have been placed on a special preferred list for a position as a police officer, except that cocaine was found in his hair sample, disqualifying him. At this point, unsurprisingly, DCAS failed to recommend him for any other civil service title position.

When the Chief of the New York City Law Department's Pensions Division informed the Police Pension Fund's Deputy Executive Director that Seiferheld's accident disability retirement should be "suspended," i.e. terminated, in its entirety, because he was no longer considered disabled, she was not terminating Seiferheld's accident disability retirement benefits because of his drug test failure. She was merely interpreting the effects that the drug test failure might have on the April 11, 2007 Board of Trustees determination denying Seiferheld accident disability retirement. Her conclusion was that the drug test failure would have no effect on Seiferheld's status with respect to accident disability; those benefits had been revoked by the Board of Trustees, and the revocation would stand, "notwithstanding" the fact that Seiferheld now would have no job. The drug test failure would not affect the prior revocation of benefits determination.

In other words, no new, allegedly unauthorized, determination was made by the Law Department. Rather, it was interpreting the preexisting, April 11, 2007 Board of Trustees decision to revoke Seiferheld's accident disability retirement benefits. Seiferheld's disability benefits were not revoked by the Law Department; they had already been revoked by the Board of Trustees.

Seiferheld's real problem—and one for which there may be no legal recourse—is that DCAS decided not to recommend that he be placed on any other special preferred list (i.e. for other civil service title positions) after he failed the drug test. This meant

that he had not been "offered city-service as a result of the placing of his or her name on a civil service list" (Administrative Code of City of NY § 13-254 [a]), and would not qualify for a "safeguards" pension in place of his revoked disability pension. But challenging DCAS's decision is an argument that Seiferheld has chosen not to make. Seiferheld does not argue that DCAS acted in excess of its authority in its decision not to recommend him for a position.

In my view, the Appellate Division erred in finding that the Board of Trustees had not considered what action should be taken with respect to revocation of the accident disability retirement benefits. This error, which the majority of this Court repeats, rests on an assumption that the Board's final determination had merely been that Seiferheld should be returned to work as a police officer. This leaves out a crucial part of the Board's ruling. The Board's final determination was that Seiferheld was not disabled, *should not receive disability benefits*, and should be returned to work.

I would therefore reverse, deny the petition and dismiss the CPLR article 78 proceeding.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ and JONES concur with Judge SMITH; Judge PIGOTT dissents and votes to reverse in a separate opinion.

Order affirmed, etc.